**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

OLEG POLIKARPOVICH TKACH,

*Plaintiff*,

v.

SCOTT BESSENT,
in his official capacity as Secretary of the United States Department of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

THE UNITED STATES DEPARTMENT OF THE TREASURY,
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

BRADLEY SMITH,
in his official capacity as Director of the United States Department of the Treasury, Office of Foreign Assets Control
1500 Pennsylvania Avenue, NW
Treasury Annex/Freedman's Bank Building
Washington, D.C. 20220

and

THE UNITED STATES DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL,
1500 Pennsylvania Avenue, NW
Treasury Annex/Freedman's Bank Building
Washington, D.C. 20220

*Defendants*.

Case No. ____________

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Oleg Polikarpovich Tkach ("Plaintiff" or "Mr. Tkach") brings this Complaint for declaratory and injunctive relief against Defendants the United States Department of the Treasury, its Secretary, Scott Bessent, and the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), and its Director, Bradley Smith (collectively, the "Defendants"), and in support of his complaint alleges:

## INTRODUCTION

1. This lawsuit arises from the Defendants' failure to adjudicate Plaintiff Oleg Polikarpovich Tkach's request to rescind his designation as a Specially Designated National ("SDN") and remove his name from the Specially Designated Nationals and Blocked Persons List (the "SDN List") after arbitrarily and capriciously designating Mr. Tkach as an SDN.

2. OFAC designated Mr. Tkach based on his previous position as a member of the Federation Council of the Federal Assembly of the Russian Federation ("Federation Council"). The sanction announcement, issued on September 30, 2022, stated that OFAC was designating all "169 Federation Council colleagues" of the Federation Council Chairwoman, Valentina Matviyenko, who had been designated in February 2022. However, at the time of his SDN listing, Mr. Tkach had already resigned from his position on the Federation Council and a new senator had been appointed in his place.

3. OFAC's designation of Mr. Tkach as an SDN—despite his resignation from the Federation Council—was arbitrary and capricious. Mr. Tkach voluntarily submitted his resignation from the Federation Council on September 7, 2022. He was replaced on September 16, 2022, two weeks before he was listed by OFAC on September 30, 2022. Mr. Tkach has not held any government position or engaged in any political activity since his resignation. This is precisely the sort of circumstance that routinely forms the basis for delisting. *See* OFAC Quick-

Reference Guide: Delisting Petitions attached as **Exhibit A** (there may be an "insufficient basis" for the sanctions if the sanctioned person can demonstrate that he "had resigned from relevant roles … before the sanction was imposed").

4. Nevertheless, OFAC relied on outdated information and designated Mr. Tkach as part of a "package" designation with all of the current members of the Federation Council, even though Mr. Tkach had already resigned his position.

5. Mr. Tkach has never had any direct or indirect ties to Vladimir Putin or Putin's close political circle, and whatever influence he may have had over Russian policy as a member of the Federation Council ceased at the time of his resignation. Since resigning in 2022, Mr. Tkach has not been involved in the Russian government or economy. He has also obtained foreign citizenship in Israel and Kyrgyzstan and has notified the Russian authorities of his foreign citizenship in the manner prescribed by Russian law. Under current Russian law, this precludes Mr. Tkach from membership in the Federation Council or holding any other government position.

6. Moreover, OFAC is unjustifiably treating Mr. Tkach differently from similarly situated individuals who were delisted because they, like Mr. Tkach, had resigned from positions that caused them to be listed in the first instance. Indeed, in many cases the sanctions against these individuals were rescinded in less time than Mr. Tkach has been waiting for his petition to be adjudicated. Despite these precedents, Mr. Tkach inexplicably remains on the SDN List.

7. On March 14, 2025, Mr. Tkach submitted a delisting petition to OFAC through counsel, providing evidence and documents that he had resigned from his position on the Federation Council weeks before he was listed by OFAC. Since that time, OFAC has not sent Mr. Tkach any questionnaires or requested any additional information. Despite multiple requests, OFAC has not indicated when it might render a decision, nor has it provided any confirmation that

it will make its decision without issuing questionnaires or information requests. Mr. Tkach's petition has now been pending for over 15 months without any substantive correspondence from OFAC and without any resolution.

8. Mr. Tkach's desire to be removed from the SDN List is not financially motivated. He plans to relocate to Israel to open an independent publishing house outside of Russia, printing books in English and Russian. The U.S. sanctions make that impossible as he has been locked out of not only the U.S. banking system, but also foreign banking institutions that comply with U.S. sanctions, including Israeli banks.

9. Mr. Tkach continues to suffer from the sanctions and will continue to suffer as long as Defendants fail to adjudicate his application. Mr. Tkach has survived on personal savings since he resigned from public office. At this point, his continued designation serves only to punish him for his previous position, even though OFAC's own guidance states that the purpose of economic sanctions is not to punish, but "to bring about a positive change in behavior of targeted foreign persons." *See* Introduction to the Office of Foreign Assets Control, at 3, attached as **Exhibit B**.

10. Mr. Tkach asserts three claims. First, Defendants' failure to adjudicate Mr. Tkach's petition constitutes an unreasonable delay under the Administrative Procedures Act ("APA"), because Mr. Tkach has presented evidence that the basis for his designation no longer applies and because OFAC has delisted other similarly situated individuals in less time. Second, Defendants' failure to delist Mr. Tkach is arbitrary and capricious because Mr. Tkach is being treated differently than similarly situated individuals who were delisted after resigning the position that caused them to be listed in the first instance. Third, Mr. Tkach's designation is arbitrary and capricious as it has no rational connection to U.S. foreign policy goals, given that Mr. Tkach had resigned from

his position on the Federation Council before he was listed and is no longer in a position to influence Russian politics or policy.

**JURISDICTION AND VENUE**

11. This action arises under the U.S. Constitution, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq*., and the Administrative Procedure Act, 5 U.S.C. §§ 555 and 701 *et seq.* This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

12. This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and Fed. R. Civ. P. 57. This Court may grant injunctive relief pursuant to Fed. R. Civ. P. 65.

13. Venue is proper in the District of Columbia as this is the district in which the events giving rise to the Complaint occurred and in which Defendants reside. *See* 28 U.S.C. §§ 1391(b) and (e).

**THE PARTIES**

14. Plaintiff Mr. Oleg Polikarpovich Tkach is a citizen of the Russian Federation and also holds citizenship in Israel and Kyrgyzstan. He was a member of the Federation Council from January 22, 2004 until September 16, 2022, when he resigned. Previously, he had a career in publishing. He aspires to relocate outside of Russia to establish an independent publishing house, although the current sanctions are prohibitive.

15. Defendant the U.S. Department of Treasury is a cabinet-level governmental department led by the Secretary of the Treasury. In addition to its core objective of promoting economic prosperity and ensuring the financial security of the United States, it implements and administers economic sanctions against foreign threats to the United States. It is also responsible

for overseeing various offices, including OFAC. It is located at 1500 Pennsylvania Ave., NW, Washington D.C. 20220.

16. Defendant Scott Bessent is the Secretary of the Treasury of the United States. Secretary Bessent is sued in his official capacity.

17. Defendant OFAC is a federal administrative agency of the U.S. Department of the Treasury and is lawfully responsible for administering U.S. economic sanctions programs, including by designating persons under E.O. 14024 and regulating dealings with them. OFAC is the sole administrative agency responsible for the reconsideration and delisting process for individuals, like Mr. Tkach, who are listed under the Russian Harmful Foreign Activities Sanctions Regulations. *See* 31 C.F.R. Parts 501 ("Reporting, Procedures and Penalties Regulations") and 587 ("Russian Harmful Foreign Activities Sanctions Regulations"). It is located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington D.C. 20220.

18. Defendant Bradley Smith is the Director of OFAC. Director Smith is sued in his official capacity.

## FACTUAL ALLEGATIONS

### A. Mr. Tkach's Background

19. Mr. Tkach was born in 1967 in the Vinnytsia region of west-central Ukraine. He is a citizen of Russia and, since resigning from his position in the Federation Council, now also holds Israeli and Kyrgyz citizenship.

20. Mr. Tkach graduated in 1991 from M.V. Lomonosov Moscow State University with a degree in Philosophy with honors. In 2012, he defended a thesis titled "The Impact of Rent-Oriented Behavior on the Process of Capital Accumulation in the Russian Economy," receiving the equivalent of a Ph.D. in economics from Saratov State and Social Economic University.

21. After receiving his degree in Philosophy, Mr. Tkach pursued a career in publishing and education. He founded Olma Press, a private Russian publishing house, which was also known for a time as Olma Media Group CJSC ("Olma Media"). He was the co-owner and Chief Executive Officer of Olma Media until 2004. Olma Media published an eclectic range of books, including memoirs of politicians from Russia, the United States and the European Union, and books about the history of art, religion, and painting.

22. On January 22, 2004, Mr. Tkach became a representative of the Federation Council (the equivalent to the United States Senate), as a representative of the regional parliament of the Kaliningrad region. Kaliningrad is Russia's western-most enclave, detached from mainland Russia and bordered by Poland, Lithuania, and the Baltic Sea.

23. Upon assuming office in 2004, Mr. Tkach relinquished his executive position and managerial control over Olma Media because, as a member of the Federation Council, Mr. Tkach could not hold any formal or informal positions at Olma Media or other commercial entities under Russian law. Mr. Tkach also relinquished any ownership interest in Olma Media that he previously held upon resigning as CEO. Since 2014 Olma Media no longer exists as a corporation.

24. On September 29, 2017, Mr. Tkach became a representative of the executive body of the Kaliningrad region in the Federation Council for a five-year term.

**B. The Scope and Purpose of OFAC Sanctions**

25. The International Emergency Economic Powers Act ("IEEPA") grants the President of the United States certain powers to deal with an unusual and extraordinary international threat to national security, foreign policy, or the economy, upon a declaration of a national emergency. 50 U.S.C. § 1701. These powers include the ability to impose economic sanctions on foreign entities and individuals, 50 U.S.C. §§ 1702–03, under the limited

circumstances of an unusual and extraordinary threat upon a national emergency. Stated simply, the President does not have unfettered discretion to impose sanctions; rather, the President may only sanction an individual if doing so addresses a national security emergency.

26. OFAC, the federal agency tasked with administering and enforcing the U.S. sanctions programs, has consistently maintained in its press releases and guidance concerning sanctions and delistings that the "power and integrity of [its] sanctions derive not only from its ability to designate and add persons to sanctions lists . . . but also from its willingness to remove persons from such lists consistent with the law." *See, e.g.*, https://home.treasury.gov/news/press-releases/sb0290, https://reconsideration.ofac.treas.gov/ (**Exhibit C**). OFAC further states that "the ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior." *See id.*

27. As such, OFAC sanctions are designed to be forward-looking, targeting certain persons or conduct to bring about a change in behavior and improve a national security crisis. "Maintaining the integrity of U.S. sanctions is a high priority for OFAC and the guiding principle behind its rigorous review process." *Id.* OFAC sanctions must "deal with" a national security crisis, not merely punish past behavior. 50 U.S.C. § 1701.

**C. The United States Imposes Sweeping Sanctions Against Russia**

28. On April 15, 2021, President Biden issued Executive Order ("E.O.") 14024, declaring a national emergency, under which sanctions may be imposed against individuals and entities furthering specified harmful foreign activities of the Russian Federation. E.O. 14024 granted the Secretary of the Treasury, in consultation with the Secretary of State, the power to designate individuals or entities meeting certain criteria, including "for being or having been

leaders, officials, senior executive officers, or members of the board of the [Government of the Russian Federation]." E.O. 14024, Section 1(a)(iii)(A).

29. Individuals designated as SDNs pursuant to Section 1 of E.O. 14024 are subject to onerous sanctions, including that their assets in the United States are blocked and U.S. persons are forbidden from providing any funds, goods, or services to SDNs or receiving the same from them.

**D. Mr. Tkach Resigns from the Federation Council**

30. Mr. Tkach was due to be reappointed to a new five-year term as a member of the Federation Council in the fall of 2022.

31. On February 25, 2022, OFAC designated the Chairwoman of the Federation Council, Valentina Matviyenko, pursuant to E.O. 14024, Section 1(a)(iii)(A).

32. On September 7, 2022, Mr. Tkach wrote a letter to the Governor of the Kaliningrad region requesting that he not be reappointed as a Federation Council member from the region for the next term. On September 16, 2022, the Governor of the Kaliningrad region appointed a new senator by decree.

**E. OFAC Mistakenly Designates Mr. Tkach**

33. On September 30, 2022, OFAC designated the entire Federation Council, including Mr. Tkach, pursuant to E.O. 14024, Section 1(a)(iii)(A). The September 30, 2022 press release announcing the sanctions stated that OFAC was designating "all of Matviyenko's 169 Federation Council colleagues" under Section 1(a)(iii)(A).

34. But OFAC relied on outdated information when adding Mr. Tkach to the SDN List alongside other members of the Federation Council. Mr. Tkach had already resigned ***two weeks prior***, on September 16, 2022, and was no longer a member of the Federation Council, unlike the other 168 council members who were designated with him.

35. Mr. Tkach's decision to resign was final. Hence, as of September 16, 2022, before his OFAC designation, Mr. Tkach was no longer connected in any way to the Russian government and no longer had any ability to influence Russian politics or policy. He has never held, and currently does not hold, any other political positions in the Russian government. Pursuant to current Russian legislation, Mr. Tkach's foreign citizenships preclude the possibility of participation in political activities in Russia, as Russian law does not authorize foreign citizens to hold public office.

36. Mr. Tkach has never had any personal or financial ties to the Russian President or his circle and was not designated on any such basis. He is not an oligarch and has never been in Mr. Putin's close political circle. Mr. Tkach had work-related contacts with his colleagues in the Federation Council during his time as a senator. As of the date of his resignation from the Federation Council, Mr. Tkach has severed those ties and does not maintain close contact with his former colleagues.

37. Delisting Mr. Tkach aligns with OFAC's stated goals of encouraging changes in behavior and incentivizes other designated individuals to take comparable steps that may warrant reconsideration of their designations, if doing so may result in having their sanctions lifted. If OFAC treats those who resign from their positions the same as those who do not, it signals that the purpose of U.S. sanctions is to punish rather than to change behavior.

38. Mr. Tkach has faced significant consequences from his designation. Mr. Tkach is effectively locked out of the U.S. economy as U.S. persons are prohibited from engaging in virtually any economic transactions him. Among other things, this effectively cuts off Mr. Tkach from the U.S. banking system.

39. Mr. Tkach's designation also has consequences in non-U.S. banking systems, as foreign banks often refuse to conduct any transactions contrary to U.S. sanctions to avoid the risk of a secondary sanctions designation.

40. Since resigning, Mr. Tkach has led a private family life and financed his life entirely from personal savings. Mr. Tkach has no intention of reentering politics in any capacity (nor can he now due to the Russian legislation which prohibits persons with foreign nationalities to hold political offices) and he has stayed away from political and commercial activities in Russia. His goal is to establish a new independent publishing house outside of Russia, publishing books in English and Russian about philosophy, art, religion, and history.

41. Even though Mr. Tkach has received Israeli citizenship and has laid the groundwork to open and operate a publishing business in Israel, the U.S. sanctions mean that Israeli financial institutions will not conduct business with him. Working outside the banking system is an insurmountable barrier to relocating to Israel or anywhere outside of Russia to move on with his life.

**F. Mr. Tkach Challenges His SDN Designation**

42. OFAC has promulgated and administers regulations governing the procedures for seeking delisting from the SDN List. *See* 31 C.F.R. § 501.807. A person on the SDN List may submit arguments or evidence that the person believes establishes that an insufficient basis exists for the sanction or that the circumstances resulting in the sanction have changed or no longer apply. After OFAC has conducted a review of the request for reconsideration, OFAC states that it "will provide a written decision to the person seeking the removal of a person" from the SDN List. 31 C.F.R. § 501.807(b)(3). For reconsideration petitions, OFAC states that it will review information submitted by the person seeking removal from the SDN List and that it may request clarifying, corroborating, or other additional information. 31 C.F.R. § 501.807(b)(1).

43. Under OFAC's own regulations, SDNs can petition OFAC to show that an insufficient basis exists for the sanction or the circumstances resulting in the sanction no longer apply, or to propose remedial steps that would negate the basis for the sanction. 31 C.F.R. § 501.807(a). OFAC guidance states that there may be an "insufficient basis" for sanctions if the petitioner can demonstrate that he "had resigned from relevant roles … before the sanction was imposed." *See* **Exhibit A;** *see also* How to Request Removal from an OFAC Sanctions List attached as **Exhibit D.** The guidance further provides that taking "steps to remove the basis for the sanction," including "resignation from a position held at the time of sanctioning," represents a "change in circumstances" that may result in delisting. *See* **Exhibit D.**

44. On March 14, 2025, Mr. Tkach, through counsel, submitted to OFAC a petition requesting reconsideration of his designation, which included his resignation letter to the Governor of the Kaliningrad Region, the decree of the Governor of the Kaliningrad Region appointing his replacement, and a contemporaneous news article.

45. OFAC did not respond. After 90 days had passed, counsel sent another email to the relevant OFAC email address, on June 12, 2025, inquiring whether OFAC intends to send a questionnaire to Mr. Tkach.

46. OFAC responded on July 1, 2025, stating that it was reviewing Mr. Tkach's petition request and was unable to provide a timeframe for the issuance of potential questionnaires.

47. After Mr. Tkach's petition had been pending for five months, on August 22, 2025, counsel for Mr. Tkach emailed OFAC asking if they should be expecting a questionnaire soon for Mr. Tkach and offering to provide any other materials or information.

48. On September 3, 2025, OFAC responded that Mr. Tkach's petition was currently under review and that it will follow up with any questions.

49. That same day, counsel for Mr. Tkach responded and inquired whether OFAC would adjudicate Mr. Tkach's petition without a questionnaire.

50. On September 11, 2025, OFAC responded that it was unable to confirm whether a potential questionnaire may be issued in the future but confirmed that Mr. Tkach's petition was being actively worked on and that it had no questions at this time.

51. There have been no further communications from OFAC. A copy of the correspondence with OFAC is attached as **Exhibit E.**

52. Mr. Tkach's petition has now been pending for over 15 months. Nevertheless, OFAC has not adjudicated Mr. Tkach's petition, provided a reason for this delay, provided Mr. Tkach with a questionnaire, or otherwise indicated when it will render a decision on Mr. Tkach's petition, despite Mr. Tkach providing evidence that he had already resigned from and been replaced on the Federation Council before his designation.

**G. Mr. Tkach Is Being Subjected to Disparate Treatment**

53. OFAC has delisted several individuals who were sanctioned under Section 1(a)(iii) of E.O. 14024, just like Mr. Tkach, and who resigned their positions both before and after they were designated. And in each of the cases where an individual had resigned before they were listed, OFAC adjudicated their petitions and removed them from the SDN List in roughly the same amount of time, or less time, than Mr. Tkach's petition has already been pending.

54. For example, the following individuals—who were sanctioned under E.O. 14024, Section 1(a)(iii) because of the positions they held at state-owned Otkritie Bank and who resigned ***prior*** to being designated—were removed from the SDN List:

(a) Anatoly Karchinisky was delisted 13 months after filing his petition.

(b) Paul Goldfinch was delisted 16 months after filing his petition.

(c) Elena Titova was delisted 14 months after filing her petition.

(d) Andrey Golikov was delisted 14 months after filing his petition.

55. In addition, Mikhail Zadornov, Alexey Panferov, Aleksei Fisun, Nadiya Cherkasova, Irina Kremleva, and Viktor Nikolaev—who were sanctioned under E.O. 14024, Section 1(a)(iii) because of the positions they held at Russian state-owned banks—were also removed from the SDN List after they resigned their positions in response to be being sanctioned.

56. Hence, in failing to adjudicate Mr. Tkach's petition and remove him from the SDN List, Defendants are impermissibly treating him differently than other individuals who have been delisted in similar situations.

## LEGAL CLAIMS

## COUNT I

### DEFENDANTS' FAILURE TO ADJUDICATE MR. TKACH'S PETITION CONSTITUTES AN UNREASONABLE DELAY UNDER THE ADMINISTRATIVE PROCEDURES ACT
**(against all Defendants)**

57. Mr. Tkach re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

58. The APA requires agencies to "conclude a matter presented to it" with "due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." 5 U.S.C. § 555(b).

59. Under the APA, reviewing courts are required to compel agency actions unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

60. The APA defines "agency action" to include, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §§ 706(1) and 551(13).

61. After OFAC has conducted a review of the request for reconsideration, OFAC states that it "will provide a written decision to the person seeking the removal of a person" from the SDN List. 31 C.F.R. § 501.807(b)(3).

62. Mr. Tkach has provided evidence that he resigned his position in the Russian Government before he was sanctioned and therefore the basis for his designation was no longer valid.

63. Defendants' failure to render a decision on Mr. Tkach's delisting petition for over 15 months constitutes an unreasonable delay under the APA.

64. Administrative agencies must treat similarly situated parties similarly or, in the alternative, provide a legitimate reason as to why they are treating them differently. Other similarly situated petitioners who were designated pursuant to E.O. 14024, Section 1(a)(iii) and petitioned for reconsideration because the basis for their designation no longer applied had their petitions adjudicated in the same amount of time or less time than Mr. Tkach's petition has been pending. Defendants have not provided a legitimate reason for treating Mr. Tkach in a different manner under the same administrative process.

65. Mr. Tkach will continue to suffer the consequences of his designation so long as Defendants continue to refuse to adjudicate Mr. Tkach's delisting petition and treat Mr. Tkach differently from similarly situated parties.

## COUNT II

### DEFENDANTS' FAILURE TO DELIST MR. TKACH IS ARBITRARY AND CAPRICIOUS BECAUSE THEY ARE TREATING MR. TKACH DIFFERENTLY THAN SIMILARLY SITUATED INDIVIDUALS (against all Defendants)

66. Mr. Tkach re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

67. The APA requires agencies to "conclude a matter presented to it" with "due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." 5 U.S.C. § 555(b).

68. The APA directs the courts to set aside any agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(a).

69. Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §§ 706(1) and 551(13).

70. Administrative agencies must treat similarly situated parties similarly or, in the alternative, provide a legitimate reason as to why they are treating them differently. Other similarly situated petitioners who were designated pursuant to E.O. 14024, Section 1(a)(iii) and petitioned for reconsideration because the basis for their designation was either erroneous at the time of designation or no longer applied as of the date of their delisting petition, had their petitions adjudicated and were removed from the SDN list. Defendants have not provided a legitimate reason for treating Mr. Tkach in a different manner under the same administrative process.

71. Defendants' failure to rescind the sanctions against Mr. Tkach, when they have done so for numerous similarly situated individuals, or proffer sufficient legitimate reasons for treating Mr. Tkach differently, is arbitrary and capricious and violates the APA.

## COUNT III

**MR. TKACH'S DESIGNATION IS ARBITRARY AND CAPRICIOUS AS IT HAS NO RATIONAL CONNECTION TO U.S. FOREIGN POLICY GOALS**
**(against all Defendants)**

72. Mr. Tkach re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

73. IEEPA limits the President's authority to impose sanctions to actions that "deal with" an ongoing national security crisis. 50 U.S.C. § 1701. Any action purportedly under IEEPA that cannot be shown to "deal with" the ongoing national security crisis is therefore outside the scope of authority granted to the Executive branch under the statute and is unconstitutional.

74. The APA directs the courts to set aside any agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2).

75. Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §§ 706(1) and 551(13).

76. By designating Mr. Tkach based on conduct that ceased prior to such designation, Defendants have exceeded their constitutional and statutory authority because such action does not "deal with" any underlying national security crisis. OFAC has not proffered any rational connection between the national security emergency created by Russia and the designation of Mr. Tkach, who resigned from his position on the Federation Council ***before*** being designated, and has since cut off ties with his former colleagues and Russian politics. Instead, Mr. Tkach's continued designation is a punishment for prior conduct when he poses no risk to reoffend, has no nexus to addressing the ongoing national security crisis, and offers Mr. Tkach no further remedial measures to demonstrate that he has rectified his past conduct.

77. As such, Mr. Tkach's continued designation is arbitrary and capricious and violates the APA.

## RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court:

A. Set aside Defendants' actions as unlawful and declare and/or order Defendants' rescission of Plaintiff's designation under E.O. 14024 and removal of his name from OFAC's SDN List;

B. Order Defendants to issue a written, reasoned decision on Plaintiff's pending delisting petition and/or provide a legitimate reason why his petition has been treated differently than those of similar situated individuals;

C. Grant an award to Plaintiff of costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq*., and any other applicable provision of law; and

D. Such other and further relief as the Court may deem proper.

Dated: New York, New York
July 14, 2026

Respectfully submitted,

By: /s/ Ronald F. Wick
Ronald F. Wick (D.C. Bar No. 439737)
Cohen & Gresser LLP
2001 Pennsylvania Avenue, Suite 300
Washington, D.C. 20006
(202) 851-2070
rwick@cohengresser.com

Christian R. Everdell*
Shannon A. Daugherty*
Kathryn Mueller*
Cohen & Gresser LLP
800 Third Avenue
New York, New York 10022
(212) 957-7600

ceverdell@cohengresser.com
sdaugherty@cohengresser.com
kmueller@cohengresser.com

*Attorneys for Plaintiff Oleg Polikarpovich Tkach*

* *Pro hac vice* forthcoming