# Exhibit B

OFAC
Office of Foreign Assets Control

Introduction to the

# Office of Foreign Assets Control

THE DEPARTMENT OF THE TREASURY
1789

Introduction to the

# Office of Foreign Assets Control

June 1, 2026


**What is OFAC?** .......... 03
- OFAC's History

**What are OFAC Sanctions?** .......... 04

**What are OFAC's Lists?** .......... 05
- Non-Listed Sanctioned Persons

**How Can Persons Be Removed from an OFAC Sanctions List?** .......... 06

**Who Must Comply with OFAC Sanctions?** .......... 06

**How Do Organizations Comply with Sanctions?** .......... 07
- Internal Controls: Sanctions Screening and Scrutiny
- Reporting Requirements
- Recordkeeping Requirements

**What are OFAC Licenses?** .......... 10
- Unblocking Frozen Funds

**What are the Consequences of Noncompliance?** .......... 11
- Strict Liability Regulations
- Enforcement Procedures
- Enforcement Actions
- Voluntary Self-Disclosures

**Resources** .......... 12

# What is OFAC?

The **Office of Foreign Assets Control (OFAC)** of the U.S. Department of the Treasury administers and enforces economic sanctions against targeted foreign jurisdictions and regimes, as well as individuals and entities engaging in harmful activity, such as terrorists, international narcotics traffickers, weapons of mass destruction proliferators, and others in response to threats to the national security, foreign policy, or economy of the United States. OFAC-administered sanctions take various forms, most commonly, to bar those targeted from the U.S. financial system and from conducting transactions with U.S. persons. In this way, economic sanctions can be an effective tool to bring about a positive change in behavior of targeted foreign persons.

## OFAC'S HISTORY

The Treasury Department has a long history of dealing with sanctions. Dating back prior to the War of 1812, Secretary of the Treasury Gallatin administered sanctions imposed against Great Britain for the harassment of American sailors. During the Civil War, Congress approved a law which prohibited transactions with the Confederacy, called for the forfeiture of goods involved in such transactions, and provided a licensing regime under rules and regulations administered by Treasury.

OFAC is the successor to the Office of Foreign Funds Control (the "FFC''), which was established at the advent of World War II following the German invasion of Norway in 1940. The FFC program was administered by the Secretary of the Treasury throughout the war. The FFC's initial purpose was to prevent Nazi Germany from seizing the holdings of foreign exchange and securities in occupied countries and the forced repatriation of funds belonging to nationals of those countries. These controls were later extended to protect assets of other invaded countries. After the United States formally entered World War II, the FFC played a leading role in economic warfare against the Axis powers by blocking enemy assets and prohibiting foreign trade and financial transactions.

OFAC itself was formally created in December 1950, following the entry of China into the Korean War, when President Truman declared a national emergency and blocked all Chinese and North Korean assets subject to U.S. jurisdiction.

OFAC
Office of Foreign Assets Control

# What are OFAC sanctions?

OFAC administers dozens of sanctions programs, including assisting in the administration of certain sanctions authorities which have been delegated to the U.S. Department of State. The primary statutory authorities for OFAC sanctions include the International Emergency Economic Powers Act (IEEPA), under which most OFAC sanctions programs are promulgated, and the Trading with the Enemy Act (TWEA), which is the underlying legislation for the Cuba sanctions program. Each program addresses different foreign policy and national security goals. As a result, the types of prohibitions employed in each program may differ — from blocking the property of specific individuals and entities to prohibitions against U.S. persons engaging in certain transactions or other dealings involving specified persons or jurisdictions. The sanctions programs that OFAC administers employ anywhere from one to all of the following tools, depending on the policy objective:

- **List-based sanctions:** target specific, listed individuals and entities, and either: (1) require the blocking of all property and interests in property of those listed persons that are or come within the United States or the possession or control of a U.S. person, and prohibit dealing in such blocked property; or (2) prohibit specific types of transactions and activities with listed persons. These individuals and entities may be designated for meeting certain criteria in the relevant sanctions authority that generally fall into two main categories: (1) conduct-based (i.e., engaging or having engaged in certain behavior); or (2) status-based (e.g., a role in a certain government or a close family relationship to a blocked person). Most sanctions programs also include derivative designation criteria — such as being owned or controlled by, or acting for or on behalf of, a blocked person or for providing material support to an individual or entity engaging in specified behavior or holding or having held a particular status — that create sanctions risk for foreign persons.
- **Government or regime sanctions:** either (1) require the blocking of all property and interests in property of a particular foreign government or regime that are or come within the United States or the possession or control of a U.S. person; or (2) prohibit specific types of transactions and activities involving a particular foreign government or regime.
- **Broad jurisdiction-based sanctions:** prohibit dealings with an entire country or geographic region. This type of sanctions tool typically includes a prohibition on importing or exporting goods or services to or from the sanctioned jurisdiction, for example, Cuba or North Korea. Not all OFAC sanctions programs that include the name of a country in the program name employ this type of sanction; many sanctions programs include a country name but employ only list-based sanctions.
- **Sectoral-based sanctions:** target individuals and entities operating or that have operated in specific identified sectors (e.g., defense sector or financial sector) of a foreign country's economy or prohibit specific activities associated with an identified sector of a foreign country's economy.
- **Secondary sanctions:** a type of sanction used to specifically and explicitly target non-U.S. persons, such as non-U.S. banks, for engaging in certain transactions with blocked persons or other specified activities. In practice, these may take the form of blocking, non-blocking, or banking-specific sanctions (e.g., cutting off U.S. correspondent accounts for non-U.S. banks). Secondary sanctions authorities historically applied only to a limited number of sanctions programs, such as those focused on Iran. Over time, however, the explicit use of secondary sanctions has become more common. As a practical matter, most sanctions programs, even if not explicitly threatening secondary sanctions, have always included authority for OFAC to sanction non-U.S. persons for providing "material support" to sanctioned persons, as described above.

*For a complete list of OFAC's sanctions programs, and information about which sanctions tools each program employs, visit the Sanctions Programs and Country Information page on OFAC's website.*

# What are OFAC's lists?

OFAC maintains several public lists of persons (which include individuals and entities) and their identified property, such as aircraft and vessels, targeted by OFAC sanctions. The principal OFAC sanctions list is the Specially Designated Nationals and Blocked Persons List, known as the "SDN List." The SDN List and the Non-SDN Consolidated Sanctions List — a list that combines all other non-blocking sanctions lists maintained by OFAC — are available for public use in different data formats through OFAC's Sanctions List Service. Persons listed on the SDN list may also appear on OFAC's other sanctions lists. OFAC provides a free search tool, the Sanction List Search Tool, which the public can use to conduct single name searches across all of the sanctions lists administered by OFAC. OFAC's sanctions lists are frequently updated, and anyone can sign up to receive email notifications whenever OFAC updates its lists or publishes a new action.

- **Specially Designated Nationals and Blocked Persons List (SDN List):** The SDN List is the principal list of sanctioned persons that OFAC publishes to implement its targeted sanctions programs. The SDN List includes certain individuals and entities sanctioned due to their nexus to a targeted country, geographic region, activity, or regime. The SDN List also includes individuals and entities, such as terrorists, narcotics traffickers, and human rights abusers, designated under sanctions programs that are not jurisdiction specific. Collectively, listed individuals and entities are called "Specially Designated Nationals and Blocked Persons" or "SDNs." U.S. persons are generally prohibited from engaging in transactions with persons on the SDN List and must block property of SDNs that are in their possession or control. As of the date of this publication, OFAC's SDN List contains thousands of names (or variations thereof) of designated individuals and entities located around the world, as well as identifications of certain property blocked by sanctions, such as aircraft and vessels.
- **Other OFAC Sanctions Lists:** In addition to its SDN List, OFAC also maintains several non-blocking sanctions lists, collectively referred to as non-SDN lists. Some non-SDN lists prohibit specific activity like the purchase or sale of publicly traded securities of an entity, or prohibit the opening or maintenance of a correspondent account or a payable-through account for certain foreign financial institutions. For more information about each list, including the nature of prohibitions that apply to the listed persons, visit OFAC's Additional Sanctions Lists page.

## Non-Listed Sanctioned Persons:

Not all sanctioned persons are separately listed in OFAC's sanctions lists. Generally, OFAC's sanctions lists do not include the names of all members or organizations of governments or regimes targeted by OFAC sanctions; those sanctioned governments or regimes are typically defined in the relevant authority imposing such sanctions. In addition, pursuant to OFAC's 50 Percent Rule, unless otherwise stated in the relevant legal authority, entities owned, directly or indirectly, 50 percent or more, individually or in the aggregate by one or more persons blocked pursuant to OFAC-administered sanctions, are also considered blocked persons even if the entity does not itself appear on the SDN List, and the same restrictions apply to such persons. (For more information, see FAQs on OFAC's 50 Percent Rule.) OFAC's sanctions programs and lists are dynamic, so appropriate due diligence before doing business with prospective parties and locations is essential. A U.S. person generally may not engage in any transactions or dealings with blocked persons, unless exempt or authorized by OFAC.

# How can persons be removed from an OFAC sanctions list?

Each year, OFAC removes numerous listings from the SDN List. Each removal is based on a thorough review by OFAC of all information at its disposal. Some examples of situations that may result in delisting include: a positive change in the behavior that led to designation, the death of a listed individual, or the basis for the sanction no longer exists.

Persons seeking removal from any OFAC sanctions list, including the SDN List, may visit OFAC's Filing a Petition for Removal from an OFAC List page to submit a request to be removed from the list (also referred to as a petition or request for reconsideration) and for guidance on what information to include in a removal request.

Before submitting a petition, OFAC recommends that you identify the listing with your name using OFAC's Sanctions List Search tool to be sure that you are listed. (For a video on how to use this tool, watch OFAC Basics: Sanctions List Search.) If you are not listed but believe an organization has mistaken you for a sanctioned person (e.g., a person with a similar name), you may wish to provide the organization with a screenshot of OFAC's Sanctions List Search tool search results along with a copy of your official government-issued identification that clearly indicates discrepancies between your information and the search results. This information may help the organization quickly resolve their concerns. If your funds or accounts were blocked due to a case of mistaken identity, submitting a license application is the appropriate action, rather than submitting a petition for removal from an OFAC list (described further in the What Are OFAC Licenses? section below). For guidance on what information to include in a license application and how to submit your request, visit the OFAC Specific Licenses and Interpretive Guidance page.

# Who must comply with OFAC sanctions?

All persons subject to the jurisdiction of the United States must comply with OFAC regulations. This includes all U.S. citizens and lawful permanent residents regardless of where they are located; all individuals and entities within the United States; and all U.S. incorporated entities and their foreign branches. Depending on the authorities governing each sanctions program, non-U.S. persons may also be required to adhere to OFAC sanctions requirements. For example, OFAC's Cuba, Iran, and North Korea sanctions programs extend sanctions prohibitions to certain foreign entities owned or controlled by U.S. persons or U.S. financial institutions. Certain sanctions programs also require foreign persons reexporting certain goods, technology, or services from the United States to comply with U.S. sanctions, even if no U.S. persons are involved in the reexport. Additionally, non-U.S. persons are prohibited from causing or conspiring to cause U.S. persons to violate U.S. sanctions, as well as from engaging in conduct that evades U.S. sanctions. For more information about sanctions requirements for non-U.S. persons, please refer to the guidance the Department of the Treasury issued jointly with the Departments of Commerce and Justice on the obligations of foreign-based persons to comply with U.S. sanctions and export control laws.

# How do organizations comply with OFAC sanctions?

While specific requirements vary depending on the sanctions program, OFAC's basic requirement is that persons not violate the programs that OFAC administers. OFAC encourages organizations subject to U.S. jurisdiction to take a risk-based approach to compliance by developing, implementing, and routinely updating a sanctions compliance program. This recommendation also extends to foreign organizations that conduct business with the United States or U.S. persons, or that use U.S. origin goods or services.

There is no "one-size-fits-all" compliance program suitable for every organization that must comply with OFAC's sanctions. While each organization's compliance program will vary depending on a variety of factors, including the organization's size and sophistication, products and services, customers and counterparties, and geographic locations, an effective program should be founded on at least five essential components of compliance:

**Management Commitment | Risk Assessment | Internal Controls | Testing and Auditing | Training**

For more information on developing an effective sanctions compliance program, see OFAC's A Framework for OFAC Compliance Commitments.

There are some obligations for persons subject to U.S. jurisdiction that uniformly apply across sanctions programs, including certain reporting and recordkeeping requirements.

## Internal Controls: Sanctions Screening and Scrutiny

The most common internal control employed by organizations is screening, typically through software, of their customers, supply chain, intermediaries, counterparties, commercial and financial documents, transactions, or other activities to identify OFAC-prohibited locations, parties, or dealings.

If screening indicates a nexus to OFAC sanctions, an organization's compliance program should guide the organization through the following steps: 1) evaluating the screening system alert; and 2) determining whether to block, reject, or process and/or otherwise proceed with the activity.

1. **Evaluating Sanctions Alerts:** OFAC recommends organizations assess all the information available to make a risk-based decision in accordance with the organization's policies, procedures, and risk profile. This may require some additional due diligence. For more information on evaluating alerts and assessing potential matches, review FAQ 5, FAQ 48, and the OFAC Basics: Sanctions List Search instructional video.

2. **Determining the Required Action:** If the screening system identifies a true match to an OFAC sanctioned person, government, jurisdiction, or activity, the organization needs to review the applicable sanctions regulations to determine whether to block the property, reject the transaction or stop certain activity, or process or proceed with activity.

- **BLOCK:** If OFAC authorities require blocking, the organization should freeze the assets or property pursuant to OFAC regulations. For example, blocked funds should be placed into a segregated, interest-bearing account located in the United States, from which only OFAC-authorized debits may be made. Title to the blocked property remains with the blocked person, but the exercise of powers and privileges normally associated with ownership is prohibited and the blocked property may not be transferred, withdrawn, or otherwise dealt in.
- **REJECT OR DO NOT PROCEED:** If OFAC authorities prohibit the transaction or activity, but there is no blockable interest (i.e., no SDN or other blocked person is involved), the transaction should be rejected (i.e., the activity should not proceed). For more information, see our FAQs about blocking and rejecting transactions. Actions related to persons on OFAC's non-SDN lists vary according to the applicable list, so always check the applicable regulations for the appropriate action for the specific circumstance.
- **PROCESS OR PROCEED:** If the transaction or activity is exempt or authorized by OFAC via a general or specific license, the organization may process the transaction or proceed with the activity consistent with their risk tolerance and internal policies. For information on specific prohibitions, exemptions, or authorizations under a particular OFAC sanctions program, please see the relevant OFAC implementing regulations and the Sanctions Programs and Country Information page on OFAC's website.

This chart provides general guidance on circumstances where each action may be appropriate. Each OFAC sanctions program is unique, so always check the applicable regulations to confirm the appropriate action.

| **BLOCK** | **REJECT / DO NOT PROCEED** | **PROCESS OR PROCEED** |
| --- | --- | --- |
| • Individuals or entities on the SDN List<br>• Blocked governments<br>• Cuba or certain Cuban nationals<br>• Entities blocked under OFAC's 50 Percent Rule | • Sanctioned jurisdictions but no blocked person (e.g., North Korea)<br>• Certain activities with individuals or entities on certain non-SDN Lists (check the specific regulations)<br>• Sanctioned sector or activity, but no blocked person | • No true OFAC nexus or match<br>• Transaction or activity exempt from OFAC sanctions<br>• Transaction or activity authorized by a general or specific license |

In addition to screening, organizations should also consider other controls and tools developed to manage sanctions risks, such as controls related to customer onboarding and refresh (e.g., "Know Your Customer" and customer due diligence), risk-based geolocation tools, risk reviews that incorporate guidance and typologies published by Treasury, and proactive investigations to identify potential sanctions evasion.

## Reporting Requirements

OFAC regulations require several types of reports. When blocking property or rejecting a transaction or activity due to OFAC sanctions, this must be reported to OFAC within 10 business days of the date of the action and, in the case of blocked property, annually thereafter. Additional reporting may be required when unblocking or transferring blocked property, or upon OFAC's request.

- **Initial Blocking Reports** must be filed within 10 business days following the date that property becomes blocked. (See 31 C.F.R. § 501.603(b)(1) for more information.)
- **Annual Reports of Blocked Property** must be filed on all blocked property held as of June 30 of the current year and must be filed annually by September 30. (See 31 C.F.R. § 501.603(b)(2) for more information.)
- **Unblocked or Transferred Blocked Property Reports** must be filed within 10 business days from the date blocked property is unblocked or transferred, unless separately reported as a condition of an OFAC general or specific license. (See 31 C.F.R. § 501.603(b)(3) for more information.)
- **Rejected Transaction Reports** must be filed within 10 business days of the date the transaction was rejected due to OFAC-administered sanctions prohibitions. (See 31 C.F.R. § 501.604 for more information.)
- **On Demand Reports** of information related to any act, transaction, or property subject to OFAC's regulations may be required by OFAC at any time, through an administrative subpoena. (See 31 C.F.R. § 501.602 for more information.)

Visit the OFAC Reporting System (ORS) page on OFAC's website for more information and to file reports.

## Recordkeeping Requirements

| Who? | What? | How long? |
|---|---|---|
| Every person engaging in transactions subject to OFAC's regulations and holders of blocked property must keep records and make those records available for examination consistent with 31 C.F.R. § 501.601. | Full and accurate records are required for each transaction subject to OFAC's regulations, including transactions processed pursuant to a license (whether a general license or a specific license) and blocked property held. | Required records must be maintained for 10 years after the date of the transaction or, with respect to blocked property, 10 years after property is unblocked. |

For a more complete description of these requirements and procedures, refer to 31 C.F.R. Part 501, Reporting, Procedures and Penalties Regulations.

# What are
# OFAC licenses?

OFAC may authorize activities that would otherwise be prohibited by sanctions. These authorizations may take the form of ***general licenses***, which authorize certain transactions for all persons who meet the conditions described in the license. General licenses are publicly issued, self-executing authorizations that permit persons to engage in activities that would otherwise be prohibited without needing to submit a license application, provided that certain terms and conditions are met. Subject to sanctions program-specific considerations, non-U.S. persons do not generally risk being sanctioned for engaging in or facilitating transactions for which a U.S. person would not require a specific license.

Applicants are encouraged to follow the best practices found in this Quick-Reference Guide to improve specific license application processing time. Applicants are also encouraged use OFAC's Check Application Status tool to monitor their case's progress. When OFAC experiences a high volume of requests, applicants may experience delays in receiving a Case ID number for their request and receiving a determination. For more information about the license application process, visit the OFAC Specific Licenses and Interpretive Guidance page.

OFAC also issues ***specific licenses*** which, in contrast to general licenses, only authorize specific transactions or activities that otherwise would be prohibited for the persons identified in the specific license. OFAC may also issue individualized ***interpretive guidance***, if appropriate, to help clarify how regulatory requirements apply to a particular transaction. OFAC reviews requests for specific licenses or interpretive guidance on a case-by-case basis and provides a written response to each applicant.

## Unblocking Frozen Funds

If your funds have been blocked or "frozen" by a financial institution or other party due to a possible link to OFAC-administered sanctions, you may apply for a specific license to unblock funds on OFAC's website using the "Release of Blocked Funds" application type. For a video tutorial, watch OFAC Basics: Applying for a License to Release Blocked Funds.



# What are the consequences of noncompliance?

Failing to adhere to OFAC sanctions requirements can cause considerable harm to the integrity and effectiveness of U.S. sanctions programs and their related policy objectives. Consequently, civil and criminal penalties for violations can be substantial. OFAC has authority to impose civil penalties for violations, which may vary by sanctions program.

**Strict Liability Regulations**

OFAC may impose civil penalties for sanctions violations based on a strict liability legal standard. This means that, in many cases, a U.S. person may be held civilly liable for sanctions violations even without having knowledge or reason to know it was engaging in activity prohibited under sanctions laws and regulations administered by OFAC. As a general matter, OFAC takes into consideration the totality of facts and circumstances surrounding an apparent violation to determine the appropriate enforcement response. For example, OFAC may consider as mitigating factors a company's implementation of a risk-based sanctions compliance program and remedial measures taken in response to an apparent violation.

## Enforcement Procedures

OFAC's sanctions enforcement process is administered pursuant to the procedures described in OFAC's Economic Sanctions Enforcement Guidelines (the "Enforcement Guidelines") in 31 C.F.R. Part 501, App. A. OFAC investigates potential violations and determines the appropriate enforcement action to take in response to apparent violations depending on the facts and circumstances of the particular case and an analysis of the following general factors affecting administrative action:

- **A.** Willful or reckless violation of law
- **B.** Awareness of conduct at issue
- **C.** Harm to sanctions program objectives
- **D.** Individual characteristics
- **E.** Compliance program
- **F.** Remedial response
- **G.** Cooperation with OFAC
- **H.** Timing of apparent violation in relation to imposition of sanctions
- **I.** Other enforcement action
- **J.** Future compliance/deterrence effect
- **K.** Other relevant factors on a case-by-case basis

OFAC may commence an enforcement action for civil violations of IEEPA- or TWEA-based sanctions prohibitions (which are the basis for most OFAC sanctions programs) within 10 years of the latest date of the violation if such date was after April 24, 2019. For civil violations of other sanctions prohibitions, OFAC may commence an enforcement action within five years of the latest date of the violation.

Review the Enforcement Guidelines for more information on OFAC's approach to sanctions enforcement and current penalty amounts. Each year, OFAC adjusts for inflation the maximum amount of the civil monetary penalties that may be assessed under relevant OFAC regulations. For illustrative purposes, as of January 15, 2025, the maximum civil monetary penalty for each apparent violation of IEEPA was $377,700.

## Enforcement Actions

OFAC may take a variety of actions in response to potential violations. These can include requesting additional information from involved parties (an administrative subpoena or a request for information); determining to take no action; issuing a "Cautionary Letter," "Finding of Violation," or a civil monetary penalty; entering into a settlement with involved parties; or referring the matter to other government agencies, if appropriate, for criminal investigation and/or prosecution. To see a complete list of OFAC's public enforcement actions, please visit the Civil Penalties and Enforcement Information page on OFAC's website.

## Voluntary Self-Disclosures

For those who believe they may have violated OFAC-administered regulations, OFAC encourages disclosing apparent violations to OFAC voluntarily. Voluntary self-disclosure to OFAC may be considered a mitigating factor by OFAC in enforcement actions and, pursuant to the Enforcement Guidelines, may result in a 50 percent reduction in the base amount of any proposed civil penalty. Self-disclosures may be submitted via OFAC's Disclosure portal. Unless the disclosure is an initial disclosure that will be supplemented with additional information, a submission should contain sufficient detail to afford OFAC a complete understanding of the circumstances surrounding an apparent violation. OFAC will generally expect a full report within 180 days after the initial notification. OFAC's Production Submission Standards guidance details OFAC's preferred technical standards for formatting electronic document productions for submission.

# Resources

- Sanctions Programs and Country Information
- OFAC Implementing Regulations
- Recent Actions
- Sanctions List Service
- Sanction List Search Tool
- Frequently Asked Questions
- OFAC Videos
- OFAC Compliance Hotline
- OFAC Licensing Hotline
- OFAC Specific Licenses and Interpretive Guidance
- OFAC's License Application Portal
- OFAC Reporting System
- A Framework for OFAC Compliance Commitments
- Guidance and Information for Industry Groups
- Civil Penalties and Enforcement Information
- Departments of Commerce, Treasury, and Justice Compliance Note: Obligations of foreign-based persons to comply with U.S. sanctions and export control laws
- Enforcement Guidelines
- OFAC's Production Submission Standards Guidance
- Filing a Petition for Removal from an OFAC List
- Sanctions Advisory: Guidance on Sham Transactions and Sanctions Evasion